## GRIFFIN v. HAINES.

REDEMPTION OF LAND. *What not sufficient excuse for failure to redeem within the time allowed.* Defendant purchased complainant's land at execution sale, who, a few days thereafter, executed a written agreement to convey him his equity of redemption therein in consideration of defendant becoming jointly bound with him on another's bond. Shortly after this defendant applied for specific execution of this contract, and obtained attachment and injunction, &c., insisting in his bill that it vested the equity in him absolutely, while complainant claimed that it operated only as a mortgage. Pending the suit, the time for redemption expired, and afterward the Chancellor sustained complainant's view of the contract, and he was directed to pay defendant the sum for which the latter was liable on the bond, a tender of which complainant accordingly made and paid into court. The complainant now offers to redeem the land from the defendant, alleging as a reason for not having done so within the time allowed, the existence of the suit just mentioned, by which he was prevented from selling the land to realize means for redemption.

*Held,* that although a case of hardship, the excuse was not sufficient, and complainant not having complied with the statute, his right of redemption was gone, but that he was entitled to be repaid the amount tendered and decreed to defendant in satisfaction of his liability on the bond.

No record found.

McFARLAND, J., delivered the opinion of the court.

Upon petition to rehear, Griffin files this bill to redeem a tract of land of his sold under execution and bought by Haines. The proof does not show that Griffin, or any one for him, tendered the money within two years, although it was paid into court with this bill. There is no proof of conversations upon

the subject, but it is clear there was not a legal tender under our adjudications of the question.

The next question is, has Griffin shown a sufficient excuse for not making the tender. His excuse is this: Soon after Haines bought the land at execution sale, Griffin executed a writing agreeing to convey to Haines the equity of redemption, upon consideration of Haines becoming jointly bound with Griffin as the security of Griffin's son for certain fines and costs in criminal prosecutions. This writing was dated 12th of August, 1867. A few days after this, on the 4th of September, Haines filed his bill for a specific execution of this agreement, and had an attachment levied upon Griffin's equity of redemption. He also obtained an injunction, which was duly executed, enjoining Griffin from selling or disposing of the same pending the suit.

Griffin resisted this bill, upon the ground that the writing was not an absolute agreement to sell the equity of redemption, but only a mortgage to secure Haines the amount he might have to pay as security for Griffin's son. And upon the hearing of that case the Chancellor so decreed, and ordered Griffin to pay this sum with interest and costs, amounting to $172, into court within thirty days, otherwise a sale of the equity of redemption was ordered in satisfaction of this sum. But before this decree was made, the two years allowed for the redemption from the date of the execution sale had expired. Within the thirty days, however, a tender of this sum ($172), together with the amount Haines paid at the original execution sale,

was made, but refused by Haines, and the money then deposited in court, and then the present bill filed to enforce the redemption.

The Chancellor dismissed Griffin's bill, holding that he had no right of redemption, but he ordered the $172, paid into the office by Griffin under the order in the first case in redemption of Griffin's equity of redemption, to be paid over to Haines, but ordered the balance of the money (being the sum paid by Haines at the original execution sale) to be returned to Griffin after retaining the costs.    From this decree Griffin appeals.

He proves that he was in embarrassed circumstances, and to enable him to redeem, he had to rely upon making a contract for a sale of the land, which he would have been able to do but for the pending of Haines' bill and the attachment and injunction restraining him from selling.    By this means he was prevented from making the tender within the two years.    The argument is, that by means of Haines' bill, with the attachment and injunction, the equity of redemption was, so to speak, held in the custody of the law.    Griffin could not, as between himself and Haines, redeem until it was determined whether or not he had any equity of redemption.    Haines insisted that he was the owner of the equity of redemption, and if so, of course Griffin had no right to redeem.    It was decided that Griffin, by paying a certain sum to Haines, would be restored to his equity of redemption, and the money was so paid, but Griffin was restored to his equity of redemption after it had

expired by lapse of time. The time expired during the time occupied in adjudicating the question under Haines' bill as to who was entitled to this equity of redemption. Haines litigated the question, as the court adjudged, wrongfully until the time expired. Under this state of facts, was it necessary, in order to keep alive Griffin's equity of redemption, to make the tender within two years?

It is argued that the facts stated constitute a fraud upon the part of Haines. This argument has much force and plausibility; but the right of redemption, as had been said, is one of strict law. Griffin, upon his own theory, was bound to redeem by paying, within the two years, the redemption money; and although he might well infer from Haines' bill that he would not accept the money, this did not excuse the tender. The pending of Haines' bill did not prevent this in a legal sense. It might have operated in fact to prevent Griffin by sale from raising the money, but this was simply his misfortune, as we are of opinion, from the proof, that Haines prosecuted his bill not fraudulently but in good faith, although decided against him. We are of opinion with the Chancellor, that, although a case of hardship, the right of redemption was gone. But we are of opinion that part of his decree, directing that the clerk pay over to Haines the $172 paid in under the order in the first case in satisfaction of the sum for which he held that Griffin had mortgaged the equity of redemption, is erroneous. It is true the order made in the original case was not appealed from, but it

Griffin *v.* Haines.

was ordered to be paid upon the assumption that the equity of redemption existed. Haines, however, did not accept the money when tendered under this order, and it was paid into court, where it seems to have remained until the decree in the present case, when the Chancellor ordered it paid to Haines. As at that time there was no equity of redemption in existence, Haines had no right to this money, and this part of the decree will be reversed and this money returned to Griffin.

- Haines will pay the costs of this court.